1
2
3
4
5
6              **IN THE UNITED STATES DISTRICT COURT**
7                 **FOR THE DISTRICT OF ARIZONA**
8  **John E. Reagan,**                 )
                                        )
9           **Defendant/Movant,**       )
                                        )    **CR  01-01104 PHX FJM**
10             **v.**                    )    **CIV 10-01796 PHX FJM (MEA)**
                                        )
11 **United States of America,**        )    **REPORT AND RECOMMENDATION**
                                        )
12          **Plaintiff/Respondent**    )
                                        )
13 _____     )

14 **TO THE HONORABLE FREDERICK J. MARTONE:**

15         On August 20, 2010, Mr. John Reagan ("Movant") filed a
16 Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28
17 U.S.C. § 2255, regarding a criminal conviction and sentence
18 entered by the Court.[1]  Respondent filed a Response to Motion to
19 Vacate Sentence Pursuant to 28 U.S.C. § 2255 on December 2,
20 2010.  See Civil Doc. 17.  Respondent also filed a notice of
21 supplemental authority.  See Civil Doc. 20.  Movant filed a
22 reply to the response on March 08, 2011.  See Civil Doc. 23.[2]

23         **I  Procedural background**

24         On June 12, 2003, Movant, codefendant Patrick Buckner
25 ("Buckner"), and five others were charged in a third superseding
26

27 _____

          [1] The criminal matter was heard by the Honorable Earl H. Carroll.
28
          [2] Also before the Court is the section 2255 action of Movant's
co-defendant, Patrick Buckner, Docket Number CR 01-1104 PHX FJM, CV
10-01799 PHX FJM MEA.

indictment with federal offenses arising from a conspiracy and scheme to defraud their employer, Boeing, a helicopter manufacturer located in Mesa, Arizona. <u>See</u> Civil Doc. 2, Exh. A. Movant was named in Count 1 (conspiracy), Counts 2, 3, 11 and 22 (wife fraud), Count 37 (money laundering) and Count 38 (making false statements). <u>Id.</u> Movant does not challenge his convictions on Count 37 and Count 38.

Count 1 of the third superseding indictment charged a multi-object conspiracy to defraud Boeing of money and property; to deprive Boeing of honest services through kickbacks, conversion of stolen property, and acting in competition with Boeing; and to unlawfully transport stolen and converted Boeing parts in interstate and foreign commerce. <u>See</u> <u>id.</u> Counts 2 through 25 charged wire fraud by false pretenses and deprivation of honest services. <u>Id.</u> On April 20, 2004, after a trial lasting thirty days, the jury convicted Movant and his codefendant Mr. Buckner of all charges against them. <u>See</u> Civil Doc. 6, Exh. U. Movant and Mr. Buckner were tried with their co-defendants Mr. Capehart and Mr. Mesler.[3]

Evidence introduced at Movant's trial established that, in exchange for monetary "kickbacks" from authorized Boeing Service Centers, Movant provided the Service Centers with stolen Boeing parts at no cost; that he authorized greater discounts on Boeing parts than that to which the Service Centers were

---

[3] The jury could not reach a unanimous verdict with regard to the charges against Mr. Capehart and the charges against him were dismissed. The charges against another co-defendant, Mr. Palminteri, were dismissed without prejudice on the government's motion, apparently prior to trial. The criminal docket in Mr. Mesler's case indicates that he was not present at his trial.

entitled; and that he authorized credits to which the Service Centers were not entitled. The evidence also indicated Movant set up a business ("Procurement Specialists") that acted in competition with Boeing. Through this business, it was alleged, Movant sold stolen Boeing parts and "after-market" parts made by Boeing competitors to Boeing customers and Boeing Service Centers.

The prosecution presented thirty-five witnesses at the trial. Mr. Burnison testified as an expert witness for the government. Extrapolating from reports referred to by the parties as "the Burnison Report," this witness testified that from 1996 through 1999, EM Helilogistics ("EMHL", a Boeing Service Center) ordered and paid for $2,343,004.72 in Boeing products and received $659,396.87 in free products during 1998 and 1999 alone. See Civil Doc. 2, Exh. B & Exh. C. Similarly, orders by Helicopter Parts and Services ("HPS", another Boeing Service Center) totaled $5,608,608.88 for the years 1996 through 1999, yet during 1998 and 1999 this Service Center paid for only $2.3 million in product, i.e., HPS received $1,070,509.50 in free products. See id., Exh. B at 1661-62, 1666-68. According to the testimony of John Giddings, Boeing's director of financial services, these free product numbers were excessive. Id., Exh. B at 1713-14.

Trial exhibits 43(a), (e), (f), (h)-(j), and (l) ("Exhibit 43") were admitted as self-authenticating records. See Civil Doc. 17, Tab 3; Civil Doc. 2, Exh. B at 1447-52, 1629-33, 1774-75. Exhibit 43 included checks issued from or on behalf of EMHL and HPS to Movant and Mr. Buckner, or on their

behalf. Each check was charged as an overt act of the conspiracy.

On May 5, 2004, Movant filed a motion for a new trial. See Criminal Doc. 510. On October 8, 2004, Mr. Buckner also filed a motion for new trial on the basis of newly discovered evidence regarding the Burnison Report, in which Movant joined. See Criminal Doc. 585 & 593; Civil Doc. 6, Exh. V. Mr. Buckner claimed to have discovered "through inside sources" that "the vast majority" of zero-dollar shipments reflected in the Burnison Report for the year 1999 were, in fact, legitimate shipments by Boeing. Criminal Doc. 593; Civil Doc. 6, Exh. V.

The trial court held a two-day evidentiary hearing in March of 2005 on the defendants' multiple post-trial motions. See Criminal Docs. 642 & 643; Civil Doc. 6, Exh. W. Mr. Buckner's counsel called David Hagstrom in support of the motion regarding the Burnison Report. See Criminal Doc. 642 at 6-13, 163-218; Criminal Doc. 643 at 229-92. The government presented witnesses in response.

The Court took the motions for a new trial based on newly discovered evidence and the motion for a new trial at Criminal Doc. 585 under advisement and denied the motions in a written order issued January 4, 2007. See Criminal Doc. 684; Civil Doc. 17, Tab 5 at 110-16. The Court found: (1) that defense witness David Hagstrom, a Boeing employee who was previously supervised by Mr. Buckner, had assisted the defendants in reviewing the Boeing documents alleged to be "newly discovered" prior to trial; (2) the government provided a copy of the Burnison Report to the defendants in mid-January

-4-

2004 and Mr. Hagstrom had a copy of the Burnison Report when he reviewed the Boeing records in February 2004, and Mr. Burnison did not testify until March 11, 2004; (3) the Boeing records were not "newly discovered" because they were "available and could have been reviewed in exercising due diligence well before Burnsion testified;" (4) "[t]he Boeing records, with possibly three minor exceptions in more than a hundred instances, fully supported the Burnison Report;" and (5) Mr. Hagstrom was a defense witness at trial and the focus of his testimony was Rotor Wing, Hawaii, Inc., i.e., there was no reference to the Burnison Report in his testimony. Criminal Doc. 684 at 2-4. The trial court (Judge Carroll) concluded that "[m]uch, if not all, of the 'Newly Discovered' evidence at issue" was arguably cumulative or only valuable for impeachment, that the evidence "would not lead to an acquittal of either Defendant in the event of a new trial[,]" and that the interests of justice did not require the granting of a new trial as to either defendant. Id. at 6-7.

On January 31, 2008, more than three years after his conviction, Movant was sentenced to 24 months imprisonment and a term of 36 months of supervised release. See Criminal Doc. 748. Movant was also sentenced to pay restitution to Boeing in the amount of $104,500, ordered to pay a fine of $25,000, and ordered to pay special assessments totalling $700. See Criminal Doc. 750. He was also ordered to forfeit $140,000 to the United States. See Criminal Doc. 814. Movant remained on release

-5-

from custody at that time.  <u>See</u> Criminal Doc. 748.[4]

Movant took a direct appeal of his conviction and sentence.  <u>See</u> Criminal Doc. 745 (filed January 31, 2008).  His appeal was consolidated with that of his co-defendant, Mr. Buckner.  Movant retained new counsel, Mr. Ross, for his appeal.  Movant and Mr. Buckner raised six issues in their joint appeal.  <u>See</u> Civil Doc. 17, Tab 7.  They argued, *inter alia*, that: (1) the trial court abused its discretion by admitting the "Burnison Report"; (2) the trial court erred by admitting a series of checks issued to the defendants by Boeing Service Centers EMHL and HPS; and (3) the trial court erred by declining to use the defendants' proffered special verdict forms.  <u>Id.</u>  The defendants did not appeal the denial of the new trial motion based on "newly discovered" evidence allegedly discrediting the Burnison Report.  <u>See</u> <u>id.</u>, Tab 7 at 121-50.

The Ninth Circuit Court of Appeals affirmed Movant's conviction and that of Mr. Buckner, finding that the data underlying the Burnison Report "would have been admissible as business records[,]" that "the Government made the records available to Defendants for inspection prior to trial[,]" and that "any possible inaccuracies or manipulation of the underlying data went to the weight of the report, not its admissibility ... and Defendants had the opportunity to 'alert the jury to any alleged discrepancies' between the report and

_____

[4] Movant and Mr. Buckner were released during the pendency of their trial, their sentencing, and the conclusion of their direct appeal proceedings.  On August 28, 2009, Movant and Mr. Buckner were ordered to surrender; Movant was ordered to surrender on or about September 9, 2009.  Accordingly, it would appear Movant finished serving his 24 month sentence in September of 2011.

the underlying data[.]" <u>United States v. Reagan</u>, 2009 WL 1185666, at *1 (May 4, 2009). The Ninth Circuit Court of Appeals also determined that the "kickback checks" from EMHL and HPS were properly admitted as "substantive evidence of wire fraud and overt acts in furtherance of the conspiracy[.]" <u>Id.</u>

The appellate court also rejected Movant's argument regarding special verdict forms, finding that such forms are neither required nor favored within the Ninth Circuit's jurisdiction, and that the "[district] court provided a specific unanimity instruction for each of the offense elements for which a guilty verdict might possibly have rested on alternative grounds, and that the jury is presumed to have followed" those instructions. <u>Id.</u> at *2.

On July 17, 2009, Mr. Buckner filed a Petition for Panel Rehearing. <u>See</u> Civil Doc. 17, Tab 10 at 226-45. The petition challenged the Court of Appeals' ruling that the Burnison Report was admissible as a summary of business records. Mr. Buckner asserted that only a portion of the records were produced by Boeing and that "[w]ithout receiving all records from which the Burnison Report was purportedly generated, the defense could not sufficiently challenge the admissibility of the Report as a summary of business records, or test its reliability and accuracy once it was admitted into evidence." <u>Id.</u>, Tab 10 at 226-35. Mr. Buckner attached an affidavit by Gregg Thurston in support of the argument, wherein Mr. Thurston reiterated the proffer and argument he made to the District Court at the motion for new trial hearing. <u>See</u> Civil Doc. 17, Tab 11 at 242-45. The Petition for Rehearing also challenged the

ruling that the checks from EMHL and HPS were evidence of the substantive wire fraud counts and overt acts in furtherance of the conspiracy.

The Court of Appeals denied the Petition for Rehearing on July 29, 2009, and neither Mr. Buckner nor Movant sought further appellate review.

## II The parties' arguments

In his section 2255 petition Movant asserts two grounds for relief. Movant argues his convictions for conspiracy and wire fraud are contrary to the recent United States Supreme Court decision in Skilling v. United States, 130 S. Ct. 2896 (2010), which limits conduct that may be prosecuted under a "deprivation of honest services" theory of criminality. Movant also asserts his trial counsel's performance was unconstitutionally ineffective because he failed to conduct an adequate investigation and review of the documents in counsel's possession that undermined the accuracy and reliability of the Burnison Report.

Respondent contends that Movant procedurally defaulted a claim that the honest services statute pursuant to which he was convicted is unconstitutionally vague, i.e., a Skilling claim, by failing to raise it in his direct appeal and, accordingly, that Movant is not entitled to relief based on the claim unless he can show cause for and prejudice arising from the default. Respondent asserts:

> Reagan did not argue below that honest services fraud was void for vagueness or that it should be limited to bribes or kickbacks, nor does he claim to have done so. Accordingly, he cannot satisfy the

> cause-and-prejudice standard. Nevertheless, a defendant who is unable to demonstrate both cause and prejudice may still obtain relief on collateral review if he can show that he is "actually innocent." Id.; Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc) (holding that a prisoner's freestanding innocence claim must "affirmatively prove that he is probably innocent"...

Civil Doc. 17 at 10. Respondent contends that Movant is not actually innocent of the crime of honest services fraud, notwithstanding the decision in Skilling.

With regard to Movant's ineffective assistance of counsel claim, Respondent maintains:

> Although Reagan fails to acknowledge it, his current argument has already been considered and rejected by the Ninth Circuit on direct appeal. See United States v. Reagan, et al, 2009 WL 1185666 at *1 (9th Cir. May 4, 2009) (unpublished memorandum decision) (finding that data underlying the Burnison Report "would have been admissible as business records[,]" that "the Government made the records available to Defendants for inspection prior to trial[,]" and that "any possible inaccuracies or manipulation of the underlying data went to the weight of the report, not its admissibility... and Defendants had the opportunity to 'alert the jury to any alleged discrepancies' between the report and the underlying data[.]")

Id. at 19.

In reply to the response to his section 2255 motion, Movant asserts:

> (1) that because Skilling was unexpected, he did not procedurally default the claim and need not prove his "actual innocence"; instead his Skilling claim is controlled by the more deferential "cause and prejudice" standard; (2) Reagan's Sixth Amendment claim is not procedurally barred because a different standard of review applies to Sixth Amendment claims and the outcome is not

-9-

> dependent upon the law of the case; and (3) lastly, Reagan provides more specific instances of deficient performance. Movant argues that: This crucial concession by the Government posits two questions: (1) is the Government's "procedural default" argument valid?; and (2) must Reagan prove he is "actually innocent" of the charges against him or does another standard apply to him?

Doc. 23 at 2.

### III Analysis

### A. Movant's <u>Skilling</u> claim

Because "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal," <u>Bousley v. United States</u>, 523 U.S. 614, 621, 118 S. Ct. 1604, 1610 (1998), absent a showing of cause and prejudice, a section 2255 movant procedurally defaults all claims which were not raised in his direct appeal, other than claims asserting that the movant was deprived of the right to the effective assistance of counsel. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594 (1982); <u>United States v. Ratigan</u>, 351 F.3d 957, 964 (9th Cir. 2003); <u>United States v. Johnson</u>, 988 F.2d 941, 945 (9th Cir. 1993).

"[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." <u>Frady</u>, 456 U.S. at 167-68, 102 S. Ct. at 1594. <u>See also</u> <u>Ratigan</u>, 351 F.3d at 964. The cause and prejudice test for excusing the failure to raise a claim on direct appeal is met when the movant's claim rests upon a new legal or factual basis that was unavailable at the time of

-10-

his direct appeal.  See, e.g., Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645-46 (1986).

A petitioner who fails to show cause and prejudice can still obtain review of a claim on collateral attack by demonstrating the likelihood of his "actual," i.e., factual, innocence.  See Bousley, 523 U.S. at 623, 118 S. Ct. at 1611-12; United States v. Braswell, 501 F.3d 1147, 1150 (9th Cir. 2007). To establish actual innocence the movant must demonstrate that, in light of all the evidence, including new evidence that might be introduced by both sides, it is more likely than not that no reasonable juror would have convicted him.  See Ratigan, 351 F.3d at 964, quoting Bousley, 523 U.S. at 623, 118 S. Ct. at 1611.  Additionally, a movant is actually innocent when he was convicted for conduct not prohibited by law.  Cf. Alaimalo v. United States, 645 F.3d 1042, 1047 (9th Cir. 2011) (using this test for actual innocence in the context of a petitioner seeking relief on the basis of a claim that was not raised in the petitioner's direct appeal or first section 2255 action, pursuant to the section's "savings clause").

Respondent contends that Movant procedurally defaulted his opportunity to challenge his honest services fraud convictions under Skilling because he did not raise a legal claim similar to that raised in Skilling during his trial or in his direct appeal.  Respondent concedes that the doctrine of procedural default does not bar consideration of the merits of the claim if Movant establishes cause for his default and actual prejudice resulting from the alleged violation.

The federal courts which have considered the issue have determined that <u>Skilling</u> is applicable on collateral review to cases which became final prior to the date the decision was issued in 2010. <u>See</u> <u>Stayton v. United States</u>, 766 F. Supp. 2d 1260, 1268 (M.D. Ala. 2011) (so holding in a case wherein the government had argued procedural default and conceded prejudice); <u>United States v. Jennings</u>, 2011 WL 3609298, at *5 (D. Minn. Aug. 15, 2011) (denying section 2255 relief but granting a certificate of appealability)[5]; <u>DeGuzman v. United States</u>, 2011 WL 777934, at *2 (W.D. Tex. Feb. 25, 2011).[6] Some

---

[5]

The Court concludes that a certificate of appealability should issue here. Courts applying <u>Skilling</u> on collateral review have reached disparate results regarding the scope and application of that decision. <u>Compare</u>, <u>e.g.</u>, <u>United States v. Panarella</u>, Crim. A. No. 00-655, 2011 WL 3273599 (E.D. Pa. Aug. 1, 2011) (granting writ of error coram nobis and vacating defendant's conviction for honest-services fraud based upon <u>Skilling</u>), and <u>Stayton v. United States</u>, 766 F. Supp. 2d 1260 (M.D. Ala. 2011) (vacating conviction on § 2255 motion in light of <u>Skilling</u>), with <u>Ryan</u>, 2011 WL 2624440 (denying relief from honest-services fraud conviction under § 2255), and <u>Rodrigues</u>, 2011 WL 529158 (same). Although the Court believes its decision here is firmly grounded in and supported by law, the facts of this case, and Supreme Court and Eighth Circuit precedent, the case law recited above suggests the <u>Skilling</u> issue is "debatable among reasonable jurists" and is "adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 483 (2000).
<u>United States v. Jennings</u>, 2011 WL 3609298, at *5 (D. Minn. Aug. 15, 2011).

[6]

The Supreme Court seems to have indicated that it is intended to apply retroactively, by granting IFP, granting a writ of certiorari, and vacating and remanding several judgments based on the honest services provision in light of the decision in <u>Skilling</u>. <u>See</u> <u>e.g.</u>, <u>Hargrove v. United States</u>, --- U.S. ----, 130 S. Ct. 3543, 177 L.Ed.2d 1121, 177 L.Ed. 1120 (Jun. 29, 2010) (No. 09-929); <u>Redzic v. United States</u>, --- U.S. ----, 130 S. Ct. 3543, 177 L.Ed.2d 1121 (Jun. 29, 2010) (No. 09-7560).
<u>DeGuzman v. United States</u>, 2011 WL 777934, at * 2 (W.D. Tex. 2011).

-12-

federal courts which have considered the issue have also concluded that, because <u>Skilling</u> marks such a "clear break" with previous decisions, a section 2255 movant has established "cause" for their procedural default of a <u>Skilling</u> claim. <u>See</u> <u>Stayton</u>, 766 F. Supp. 2d at 1265-66 ("<u>Skilling</u> represents just the sort of clear break with the past that the United States Supreme Court contemplated as giving rise to cause." (internal citations omitted)). <u>But</u> <u>see</u> <u>Walker v. Rivera</u>, ___ F. Supp. 2d ___, 2011 WL 4480170, at *3 (D.S.C. Sept. 26, 2011).[7]

Movant's case became final in 2009. Allowing for the most generous application of the relevant law, because some courts have found <u>Skilling</u> applicable on collateral review to cases final before the date it was issued in May of 2010, Movant may raise a <u>Skilling</u> claim in this section 2255 action without a showing of cause and prejudice. Additionally, should the Court conclude to the contrary, i.e., that a <u>Skilling</u> claim may not properly be raised because it is procedurally precluded, the Court may follow the federal courts that have concluded that the decision in <u>Skilling</u> constitutes adequate cause to allow a federal court to proceed to the merits of a procedurally

_____

[7]
The Court finds that Petitioner cannot establish the presence of "cause" for his procedural default. Other defendants in honest services actions asserted and preserved the constitutional challenge to 18 U.S.C. § 1346 despite the fact that existing case law was decidedly against their position. <u>See</u>, <u>Skilling v. United States</u>, --- U.S. ----, 130 S. Ct. 2896, [] (2010); <u>Weyhrauch v. United States</u>, --- U.S. ----, 130 S.Ct. 2971, [] (2010); <u>Ryan v. United States</u>, 645 F.3d 913, 916-17 (7th Cir. 2011). Petitioner is not, however, without recourse because he still has an avenue of relief under § 2241 should he be able to establish "actual innocence." <u>Walker v. Rivera</u>, 2011 WL 4480170, at *3 (D.S.C. 2011).

-13-

defaulted "Skilling" claim.

However, Movant cannot establish the "prejudice" prong of the cause and prejudice test, nor that he is "actually innocent", because Movant is not entitled to relief pursuant to the holding in Skilling. The theory of honest services fraud voided in Skilling is not the theory of honest services fraud pursuant to which Movant was convicted. Accordingly, neither is Movant entitled to relief on the merits of a Skilling claim.

The mail fraud statute reads in part as follows:

> Whoever, having devised ... any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises ... [uses the mails in furtherance of the scheme shall be punished by imprisonment or fine or both].

18 U.S.C. § 1341 (2000 & Supp. 2011). The wire fraud statute is, in pertinent part, identical. See id. § 1343.

In McNally v. United States, 483 U.S. 350, 107 S. Ct. 2875 (1987), the Supreme Court interpreted the statutory language of section 18 U.S.C. § 1341 to apply only to deprivations of property. In response to McNally, Congress broadened the scope of the mail and wire fraud statutes by enacting 18 U.S.C. § 1346. That section provides:

> For the purposes of this chapter [including § 1341 and § 1343], the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right to honest services.

18 U.S.C. § 1346 (2000 & Supp. 2001).

> Thus, § 1346 brought schemes to deprive another of honest services within the scope of the mail and wire fraud statutes. In Skilling v. United States, the Supreme Court addressed the scope and constitutionality of

-14-

§ 1346, concluding that the statute criminalizes only "fraudulent schemes to deprive another of honest services through bribes or kickbacks." <u>Skilling</u>, 130 S.Ct. at 2928, 2931.

<u>United States v. Redzic</u>, 627 F.3d 683, 687 (8th Cir. 2010).

In <u>Skilling</u> the Supreme Court held that, for purposes of 18 U.S.C. §§ 1341 and 1343, the term "scheme or artifice to defraud" in 18 U.S.C. § 1346 (the "honest services" provision), applies only to bribes and kickbacks.[8] <u>See</u> <u>Skilling</u>, 130 S. Ct. at 2905-06 (as compared to the loss of "intangible rights" such as "honest services", for example, by a public official's undisclosed self-dealing). The Supreme Court concluded that "there is no doubt that Congress intended § 1346 to reach at least bribes and kickbacks" because the "vast majority" of pre-McNally honest services cases involved bribery or kickback schemes. <u>Id.</u> at 2930-31 (internal quotation marks and citation omitted).

The <u>Skilling</u> opinion states that "[c]onstruing the honest-services statute to extend beyond that core meaning," such as to reach undisclosed conflicts of interests, "would encounter a vagueness shoal." <u>Id.</u> at 2907. Accordingly, "[t]o preserve the statute without transgressing constitutional limitations," the Supreme Court held that section 1346

---

[8]

In June 2010, the Supreme Court decided <u>Skilling v. United States</u>, ---U.S. ----, 130 S.Ct. 2896, [] (2010). Vacating the conviction of Jeffrey Skilling on charges that grew out of the Enron collapse, the Supreme Court held there that "honest services" mail fraud encompasses only "paradigmatic cases of bribes and kickbacks." 130 S. Ct. at 2933. <u>Ryan v. United States</u>, 759 F. Supp. 2d 975, 978-79 (N.D. Ill. 2010).

-15-

"criminalizes only the bribe-and-kickback core of the pre-McNally case law." Id. at 2931. The Court reasoned that construing section 1346 to encompass bribery and kickback schemes did not raise the notice and arbitrary-prosecution concerns underlying the void-for-vagueness doctrine, id., 130 S. Ct. at 2933-34, stating: "whatever school of thought concerning the scope and meaning of § 1346, it has always been as plain as a pikestaff that bribes and kickbacks constitute honest-services fraud, and the statute's mens rea requirement further blunts any notice concern." Id. at 2933 (internal quotation marks and citations omitted).

In the Skilling case the charged conspiracy contained three objects: honest-services wire fraud, money-or-property wire fraud, and securities fraud. Id. Because the government did not allege that the defendant had solicited or accepted a bribe or kickback in exchange for making misrepresentations about the corporation to shareholders, the Supreme Court concluded that "[he] did not commit honest-services fraud." Id. However, explicit in the Supreme Court's decision is the conclusion that fraud convictions based on both an invalid honest-services theory and a separate, valid money-property theory are subject to harmless error analysis and "do[] not necessarily require reversal." Id., citing Hedgpeth v. Pulido, 555 U.S. 57, 129 S. Ct. 530 (2008).

Movant acknowledges the government argued a theory of honest-services prosecution which is still viable after Skilling, i.e., that he received kickbacks from third parties to the detriment of Boeing. He alleges, however, that it is

-16-

impossible to determine whether the jury convicted him based on the kickback theory of liability because the government "consistently" alleged he also deprived Boeing of his honest services by acting contrary to Boeing's interests and acting in competition with Boeing, theories invalidated by _Skilling_. Movant argues that special verdict forms were the only way to determine the basis of liability and the trial court declined to use them, therefore, his convictions must be vacated.

Respondent argues:

> Reagan is mistaken. A review of the record establishes that neither the holding in _Skilling_ nor the lack of special verdict forms provide a basis for disturbing his convictions for conspiracy or honest services wire and mail fraud. As will be demonstrated below, the jury convicted Buckner of the substantive crimes of (1) wire fraud involving only a legally-valid kickback theory of honest-services fraud, (2) mail fraud involving a scheme to deprive Boeing of money and property and of honest services through the theft and conversion of its property, and (3) interstate transportation of stolen and converted property. By convicting Reagan of those substantive counts, the jury must necessarily have found beyond a reasonable doubt those specific, legally-valid, objects of the conspiracy. Therefore, all of his convictions remain valid post-_Skilling_, and he is entitled to no relief.

Doc. 17 at 12.

Respondent further asserts:

> A plain reading of the instructions fairly compels the conclusion that [Movant] could be convicted of wire fraud only if the jury found beyond a reasonable doubt that he participated in a kickback-scheme to defraud Boeing. The Ninth Circuit previously recognized on direct appeal that Reagan's wire fraud convictions were based on a "kickback" honest-services theory. See

-17-

> Reagan, 2009 WL 1185666 at *1 (finding that
> the "kickback checks" were properly admitted
> as "substantive evidence of wire fraud and
> overt acts in furtherance of the
> conspiracy[.]").
> ***
> It is clear the indictment, the jury
> instructions, and the prosecutor's carefully
> compartmentalized argument ensured that the
> jury understood that Counts 2-25 were based
> exclusively on a kickback theory of
> honest-services fraud. Thus, because the jury
> necessarily must have convicted Reagan on a
> kickback theory of honest-services wire fraud
> he cannot establish actual innocence; the
> conduct for which he was convicted remains
> criminal after <u>Skilling</u>. His motion must be
> denied with respect to wire fraud. (Counts 2,
> 3, 11 and 22).

<u>Id.</u> at 14-15.

<u>Skilling</u> applied harmless error analysis to the challenged jury instruction regarding conviction on an impermissible legal theory. The Ninth Circuit Court of Appeals has held that the harmless error standard applies in section 2255 actions wherein the adequacy of or confusion regarding jury instructions are challenged on the basis that they allowed the jury to convict on an improper legal theory. <u>See</u>, <u>e.g.</u>, <u>United States v. Montalvo</u>, 331 F.3d 1052, 1058 (9th Cir. 2003). Accordingly, in applying the above standard to the instant case, the Court must examine the findings made by the jury. The allegedly erroneous jury instruction, i.e., purportedly allowing the jury to convict based on an interpretation of the statute which violates the holding in <u>Skilling</u>, was harmless error unless it had a "substantial and injurious effect or influence" on the jury's determination. <u>See</u> <u>Hedgpeth</u>, 55 U.S. at 59-62, 129 S. Ct. at 531-33.

Having thoroughly reviewed the record in this matter, including the pleadings currently before the Court and the attached transcripts of the trial and exhibits, the indictments, the jury instructions, and the transcripts of the opening and closing arguments, the Magistrate Judge concludes that the government established Movant's guilt by participation in a bribery kickback scheme involving money and property, a theory of guilt clearly preserved in <u>Skilling</u>. Any error in the challenged jury instruction was harmless and, accordingly, Movant is not entitled to relief on the basis of the Supreme Court's holding in <u>Skilling</u>. <u>Skilling</u> limited the scope of honest services fraud to its historic "core," defining the "core" of honest services fraud to include "only the types of bribery and kickback schemes that were criminalized in cases prior to the Supreme Court's decision in <u>McNally v. United States</u>, 483 U.S. 350, 107 S. Ct. 2875, 97 L.Ed.2d 292 (1987)." <u>United States v. Bryant</u>, 655 F.3d 232, 243 (3d Cir. 2011).

In <u>Skilling</u> itself, the Supreme Court distinguished conventional fraud from § 1346 honest-services fraud as follows:

> Unlike [conventional] fraud in which the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other, the honest-services theory targeted corruption that lacked similar symmetry. While the offender profited, the betrayed party suffered no deprivation of money or property; instead, a third party, who had not been deceived, provided the enrichment.

130 S. Ct. at 2926.

The jury was presented with sufficient evidence to sustain a conviction for fraud under the money-or-property

-19-

theory. Because the jury was instructed on a valid theory of guilt, of which sufficient evidence was presented, the challenged instruction was harmless. See United States v. Black, 625 F.3d 386 (7th Cir. 2010) (submission of honest services fraud charge to the jury did not contaminate defendant's conviction for obstruction of justice because evidence was sufficient to convict defendant); United States v. Johnson, 463 F.3d 803, 809 (8th Cir. 2006).

### B. Movant's ineffective assistance of counsel claim

> The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).... To prevail on a claim of ineffective assistance of counsel, petitioner must show 1) his attorney's performance was unreasonable under prevailing professional standards; and 2) there is a reasonable probability that but for counsel's unprofessional errors, the results would have been different. United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting Strickland, 466 U.S. at 687, 104 S. Ct. at 2064). "Strickland defines a reasonable probability as 'a probability sufficient to undermine confidence in the outcome.'" Id.

United States v. Span, 75 F.3d 1383, 1386-87 (9th Cir. 1996). See also United States v. Thomas, 417 F. 3d 1053, 1056 (9th Cir. 2005).

The Sixth Amendment entitles a criminal defendant to "a reasonably competent attorney, whose advice is within the range of competence demanded of attorneys in criminal cases." United States v. Cronic, 466 U.S. 648, 655, 104 S. Ct. 2039, 2044-45 (1984) (internal quotations omitted). In order to find that Movant was deprived of the effective assistance of counsel and grant him relief on this claim pursuant to section 2255 the

Court must conclude counsel's performance was deficient and that the deficient performance prejudiced Movant. <u>See</u> <u>United States v. Withers</u>, 638 F.3d 1055, 1066-67 (9th Cir. 2011). Movant bears the burden of providing sufficient evidence from which the Court can conclude his counsel's representation was unconstitutionally ineffective. <u>Id.</u>

Counsel's performance is deficient when it is unreasonable, or not "within the range of competence demanded of attorneys in criminal cases." <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2054. Judicial scrutiny of counsel's performance must be "highly deferential." <u>Id.</u>, 466 U.S. at 689, 104 S. Ct. at 2065. <u>See</u> <u>also</u> <u>Carter v. Lee</u>, 283 F.3d 240, 248-49 (4th Cir. 2002). There is a "strong presumption" that trial counsel's conduct and strategy falls "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065. Movant must overcome a strong presumption that his counsel's representation was within a wide range of reasonable professional assistance. <u>See</u> <u>United States v. Ferreira-Alameda</u>, 815 F.2d 1251, 1253 (9th Cir. 1996); <u>United States v. Molina</u>, 934 F.2d 1440, 1447 (9th Cir. 1991).

Movant contends that his trial counsel's performance was deficient because counsel failed to review all of the documents underlying the Burnison Report prior to trial. Movant asserts that evidence presented at the hearing on the motion for new trial demonstrates the Burnison Report was not a summary of otherwise admissible business records, but "[r]ather, it was a list of data specifically selected based on very limited criteria set forth by the Government to manipulate shipments to

-21-

EMHL and HPS, and improperly suggest that it constitutes 'free product.'" Civil Doc. 2 at 31. Movant argues he was prejudiced by his counsel's lack of review because it resulted in his counsel's failure to expose the Burnison Report's vulnerability to being excluded as evidence or "the defense would have been able to destroy its credibility on cross-examination and squarely refute the Government's suggestion that it demonstrated $1.7 million loss to Boeing in 'free' parts." Id. at 32.

Respondent alleges Movant is simply re-urging an argument rejected in the motion for a new trial and rejected by the Ninth Circuit Court of Appeals in Movant's direct appeal. Respondent contends that, because Movant presents no facts which were not considered by the trial court (in the motion for a new trial) and in his direct appeal, the Ninth Circuit Court of Appeals' decision regarding this issue is law of the case and that the Court should not re-examine the issue in the context of an ineffective assistance of counsel claim.

Whether pursuant to a "law of the case" theory or the application of section 2255, as a general rule, "[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding." United States v. Currie, 589 F.2d 993, 995 (9th Cir. 1979). A section 2255 petitioner may, in limited circumstances, raise claims of *trial court error* that were previously raised and decided on direct appeal. See Feldman v. Henman, 815 F.2d 1318, 1322 (9th Cir. 1987) (emphasis added), citing Kaufman v. United States, 394 U.S. 217, 227 n.8, 89 S. Ct. 1068, 1074 n.8 (1969).

> The scope of this exception has been clarified by Supreme Court and Ninth Circuit case law. The guiding principles may be summarized as follows: When a district court is confronted by a repetitive claim in a § 2255 Motion, the court may refuse to consider the claim and may give controlling weight to the court of appeals' determination if (1) the "same ground" presented in the § 2255 Motion was previously determined adversely to the petitioner; (2) the prior determination was "on the merits;" and (3) the "ends of justice" would not be served by reaching the merits of the claim in the subsequent § 2255 Motion. Sanders v. United States, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, [] (1963); Molina v. Rison, 886 F.2d 1124, 1127 (9th Cir. 1989); Polizzi v. United States, 550 F.2d 1133, 1135 (9th Cir. 1976).

United States v. Olmos-Esparza, 974 F. Supp. 1311, 1317 (S.D. Cal. 1997).

"[A] ground is successive if the basic thrust or 'gravamen' of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments." Molina, 886 F.2d at 1129 (citations omitted). The "ends of justice" require consideration of an issue determined by the Court of Appeals only when there has been a change in the law or "manifest injustice" will result if the petitioner is not excused for failing to advance in the earlier proceedings the arguments he raises in the section 2255 motion. See id. at 1131; Polizzi, 550 F.2d at 1135; Olmos-Esparza, 974 F. Supp. at 1317.

Movant is procedurally barred from relitigating the question of his counsel's alleged failure to adequately examine the records underlying the Burnison Report because Movant effectively litigated the prejudicial effect of the issue in his motion for a new trial and on direct appeal. Accordingly,

-23-

Movant may not revisit the issue for a third time by way of collateral attack alleging ineffective assistance of counsel. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); Higgs v. United States, 711 F. Supp. 2d 479, 525 (D. Md. 2010). See also United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) ("'[O]nce a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.'", quoting United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977)); United States v. Davis, 406 F.3d 505, 511 (8th Cir. 2005); Jackson v. United States, 638 F. Supp. 2d 514, 571 (W.D.N.C. 2009).

Presuming that the issue of counsel's alleged unconstitutional ineffectiveness is properly before the Court, and not foreclosed by the Ninth Circuit Court of Appeals' decision in Movant's direct appeal, Movant cannot establish that any "failure" by his counsel was prejudicial. When examining the underlying argument regarding the vulnerability of the Burnison Report, the trial court concluded: "The Boeing records, with possibly three minor exceptions in more than a hundred instances, fully supported the Burnison Report." Doc. 17, Tab 5 at 112; Criminal Doc. 684. The Magistrate Judge concludes that any deficiency in counsel's performance was not prejudicial because it is extremely unlikely that the Burnison Report would have been excluded or that any additional diminution of the report's validity would have resulted in an acquittal.

## IV Conclusion

Movant is not entitled to relief on the merits of his <u>Skilling</u> claim because any error in instructing the jury in this matter which might have allowed the jury to convict on the theory of guilt invalidated by the holding in <u>Skilling</u> was harmless error. Additionally, Movant is not entitled to relief on his claim that he was denied the effective assistance of counsel.

**IT IS THEREFORE RECOMMENDED** that Mr. Reagan's motion for relief from his convictions and sentences pursuant to section 2255 be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections.

Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure to timely file

objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. Should Movant seek a certificate of appealability, the Magistrate Judge recommends that the request be denied.

DATED this 22nd day of November, 2011.

_____
Mark E. Aspey
United States Magistrate Judge