**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John E. Reagan,                )<br>                                           )<br>        Defendant-Movant,  )<br>                                           )<br>vs.                                      )<br>                                           )<br>United States of America,  )<br>                                           )<br>        Plaintiff-Respondent. )<br>_____) | No. CV 10-01796-PHX-FJM<br>      CR 01-01104-04-PHX-FJM<br><br>**ORDER** |

The court has before it defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 1), his memorandum in support (doc. 2), respondent's response (doc. 17), respondent's notice of supplemental authority (doc. 20), and defendant's reply (doc. 23). We also have the Report and Recommendation of the United States Magistrate Judge recommending that defendant's motion for relief be denied (doc. 26), and defendant's objections (doc. 31).

Defendant was convicted of conspiracy, wire fraud, money laundering, and making false statements on April 20, 2004. The actions underlying his conviction related to defendant's attempts to defraud his employer, Boeing. He now asserts that his convictions for conspiracy and wire fraud are contrary to Skilling v. United States, 130 S. Ct. 2896 (2010) and that he was denied the effective assistance of counsel.

**I**

"A § 2255 movant procedurally defaults his claims by not raising them on direct

1 appeal and not showing cause and prejudice or actual innocence in response to the default."
2 <u>United States v. Ratigan</u>, 351 F.3d 957, 962 (9th Cir. 2003).  "[T]o obtain collateral relief
3 based on trial errors to which no contemporaneous objection was made, a convicted
4 defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual
5 prejudice' resulting from the errors of which he complains." <u>United States v. Frady</u>, 456 U.S.
6 152, 167-68, 102 S. Ct. 1584, 1594 (1982).  "Cause" requires a showing of "some objective
7 factor" which impeded compliance with a procedural rule, such as "a showing that the factual
8 or legal basis for a claim was not reasonably available to counsel." <u>Murray v. Carrier</u>, 477
9 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986).  Prejudice requires "showing, not merely that
10 the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and
11 substantial disadvantage, infecting his entire trial with error of constitutional dimensions."
12 <u>Frady</u>, 456 U.S. at 170, 102 S. Ct. at 1596.  There is a narrow exception to the cause and
13 prejudice requirement "where a constitutional violation has probably resulted in the
14 conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496, 106 S. Ct. at 2649.
15 Actual innocence is established if a petitioner demonstrates that it is more likely than not that
16 no reasonable juror would have convicted him, or he was convicted for conduct not
17 prohibited by law. <u>Alaimalo v. United States</u>, 645 F.3d 1042, 1047 (9th Cir. 2011).

**II**

19 Defendant's first claim is that his conviction is contrary to <u>Skilling v. United States</u>,
20 130 S. Ct. 2896 (2010).  In <u>Skilling</u>, the United States Supreme Court narrowed the meaning
21 of the honest services doctrine under 18 U.S.C. § 1346 to encompass only bribery or
22 kickback schemes. <u>Id.</u> at 2930-31.  Respondent contends that defendant procedurally
23 defaulted his convictions for honest services fraud because he did not raise a legal challenge
24 similar to that raised in <u>Skilling</u>.  Even assuming defendant has shown cause for failing to
25 raise a legal claim similar to that of <u>Skilling</u> during his trial or on direct appeal, he has not
26 shown prejudice or actual innocence.  The conduct underlying his conviction, taking
27 kickbacks, is still a valid theory of honest services fraud after <u>Skilling</u>.  See <u>Skilling</u>, 130 S.
28 Ct. at 2931 ("§ 1346 criminalizes *only* the bribe-and-kickback core of the pre-<u>McNally</u> case

1   law."). As a result, he is not entitled to relief on the merits of a Skilling claim.

2   Defendant contends that the jury could have convicted him based on an interpretation
3   of § 1346 which violates the holding of Skilling. The harmless error standard applies when
4   a jury may have convicted on a legally invalid theory and a defendant challenges jury
5   instructions in a § 2255 action. Skilling, 130 S. Ct. at 2934; United States v. Montalvo, 331
6   F.3d 1052, 1058 (9th Cir. 2003). An error is harmless unless it "had substantial and injurious
7   effect or influence in determining the jury's verdict." Hedgpeth v. Pulido, 555 U.S. 57, 58,
8   129 S. Ct. 530, 531 (2008) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S. Ct.
9   1710, 1714 (1993)).

10   As the magistrate judge noted, "the government established Movant's guilt by
11   participation in a bribery kickback scheme involving money and property, a theory of guilt
12   clearly preserved in Skilling." Report and Recommendation at 19. The jury was instructed
13   on a valid theory of guilt and sufficient evidence was presented to sustain a conviction. We
14   conclude that the challenged instruction was harmless.

15   **III**

16   Defendant alleges that he was denied the effective assistance of counsel at his trial.
17   To be entitled to relief on this ground, defendant must show that his counsel's performance
18   was deficient and that this deficiency prejudiced his defense. Strickland v. Washington, 466
19   U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Deficiency is established by showing that
20   "counsel's representation fell below an objective standard of reasonableness. . . . under
21   prevailing professional norms." Id. at 688, 104 S. Ct. at 2064-65. To establish prejudice, a
22   "defendant must show that there is a reasonable probability that, but for counsel's
23   unprofessional errors, the result of the proceeding would have been different." Id. at 694,
24   104 S. Ct. at 2068. "Review of counsel's performance is highly deferential and there is a
25   strong presumption that counsel's conduct fell within the wide range of reasonable
26   representation." United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1986).

27   The basis for this claim is counsel's alleged failure to review all documents underlying
28

1 the Burnison Report before trial.[1]  Defendant pursued this theory in his motion for new trial
2 and his direct appeal.  "Issues disposed of on a previous direct appeal are not reviewable in
3 a subsequent § 2255 proceeding." United States v. Currie, 589 F.2d 993, 995 (9th Cir. 1979).
4     Defendant also claims that counsel failed to effectively cross-examine the report's
5 author, Mr. Burnison.  At an evidentiary hearing on his motion for new trial, defense witness
6 David Hagstrom (a Boeing employee previously supervised by co-defendant Buckner)
7 testified that there were legitimate reasons why the zero line items went out at no charge.
8 Defendant argued that Hagstrom's investigation of the report undermined its credibility and
9 his counsel was deficient by not going through the Burnison report and supporting
10 documentation before trial.  However, defendant fails to establish that any prejudice resulted
11 from his counsel's actions.  The trial court concluded that the documents, "with possibly three
12 minor exceptions in more than a hundred instances, fully supported the Burnison Report."
13 (Doc. 17, tab 5 at 112).  Defendant is not entitled to relief on this claim.

**IV**

15 **IT IS THEREFORE ORDERED** accepting the recommendation of the magistrate
16 judge (doc. 26) and **DENYING** the motion for relief pursuant to 28 U.S.C. § 2255 (doc. 1).
17 DATED this 14th day of March, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

---

[1] Boeing employee Mark Burnison prepared a report for the government's use at trial which showed sales orders with zero line items (items included in the order without a price). By comparing this data with the price at which the items should have been billed, Mr. Burnison suggested that two Boeing Service Centers received free product totaling over $1 million.